UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KAREN LJUNGBERG,<br>　　　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>SAINT VINCENT HOSPITAL,<br>TENET HEALTHCARE CORP./<br>UNITED SURGICAL PARTNERS INT'L/<br>CONIFER HEALTH SOLUTIONS<br>TEAMSTERS UNION LOCAL 170,<br>　　　　　　　　　　Defendants. | C.A. No. 4:23-cv-40166-MRG |

**VHS ACQUISITION SUBSIDIARY NO. 9, INC., AND TENET HEALTHCARE
CORPORATION'S  MEMORANDUM IN SUPPORT OF
<u>ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>**

Defendants VHS Acquisition Subsidiary No. 9, Inc. d/b/a Saint Vincent Hospital ("SVH"), which is misnamed as "Saint Vincent Hospital," and Tenet Healthcare Corporation ("Tenet") (collectively referred to as the "SVH Defendants"), by and through their undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(6) and L.R. 7.1, submit this Memorandum in Support of their Motion to Dismiss Plaintiff's First Amended Complaint ("Amended Complaint") against the SVH Defendants. Plaintiff Karen Ljungberg ("Plaintiff") alleges eight claims in her Amended Complaint against the SVH Defendants[1]: failure to pay wages in violation of the Massachusetts Wage Act (M.G.L. c. 149, § 148) (Count I) and the Fair Labor Standards Act ("FLSA") (Count III), retaliation in violation of the Massachusetts Wage Act (M.G.L. c. 149, § 148A) (Count II), breach of the covenant of good faith and fair dealing (Count IV), breach of contract (Count V), unjust enrichment (Count VI), promissory estoppel

---

[1] Count IX alleging breach of the duty of fair representation in violation of M.G.L.c. 150A, § 4A(1)(a) and (4) is alleged against Teamsters Union Local 170 only.

(Count VII), quantum meruit (Count VIII), and request for declaratory judgment (M.G.L. c. 231 § 1) (Count X). *See* ECF Doc. 17, Exhibit 1, ¶¶ 45-71; 76-77. As set forth below, all of these claims should be dismissed.

First, Tenet is entitled to dismissal of all of Plaintiff's claims against it as this Court does not have personal jurisdiction over Tenet. Tenet does not have the type of contacts with the Commonwealth of Massachusetts, or involvement with the facts and circumstances giving rise to this lawsuit, that are necessary to confer jurisdiction over Tenet. Second, Plaintiff fails to state any claims against Tenet as the existence of an employment relationship is a primary element of any employment-related claim and that has not been sufficiently alleged here. Third, the SVH Defendants are entitled to dismissal of all of Plaintiff's state law claims because they are preempted by federal law. Lastly, the SVH Defendants are entitled to dismissal of Plaintiff's FLSA claim as she has failed to establish that she is owed any wages, and any argument that she is owed wages in entirely dependent upon an interpretation of her union's Collective Bargaining Agreement ("CBA").

## FACTUAL BACKGROUND[2]

### I. TENET

Tenet, is a foreign corporation, which is not registered to conduct business in Massachusetts and does not solicit or transact business in Massachusetts. *See* Affidavit of Margie Arion, ¶ 5. Tenet does not maintain operations in Massachusetts and does not employ any Massachusetts employees either. *Id.* Further, Tenet had nothing to do with the facts and circumstances giving rise to this lawsuit. *Id.* At the time of the events in question in this

---

[2] For the purpose of this Motion only, Defendants recite the non-conclusory, non-speculative facts contained in the Amended Complaint as though they were true. *See Schatz v. Republican State Leadership Comm.,* 669 F.3d 50, 55 (1st Cir. 2012). All lettered exhibits referenced herein are attached to the Affidavit of Diane Saunders, sworn to on January 2, 2024.

lawsuit, Plaintiff was not employed by Tenet, but by an indirect subsidiary of Tenet. *See id.* at ¶ 4.

## II. PLAINTIFF'S EMPLOYMENT AT SVH AND LOCAL 170

In or around 2018, Plaintiff was employed as a per diem Mammography Technologist. *See* ECF Doc. 17, Exhibit 1, ¶ 8. Throughout her employment with SVH, Plaintiff was a member of the Teamsters Union Local 170 ("Local 170"), and she was subject to a Collective Bargaining Agreement ("CBA"). *Id.* at ¶ 11; Exhibit A; Exhibit 1.[3]

The CBA contains provision relevant to nearly every imaginable aspect of Plaintiff's employment with SVH, including (but not limited to):

- Article 11, Grievance and Arbitration, which establishes a procedure for the resolution of grievances;

- Article 13, Wage Increases, which governs an employee's placement on the wage Step Grid and corresponding payment; and

- Article 16, Differentials and Overtime Pay, which governs various rates of pay for services performed based on time of day, week and year. *See* Exhibit A; Exhibit 1.

In or around March 2023, SVH and Local 170 entered into a Collective Bargaining Agreement ("Agreement"). *See* ECF Doc. 17, ¶ 11. Article 13 of the Agreement addressed

---

[3] When reviewing a motion to dismiss, courts may consider "documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011). Here, the CBA is central to Plaintiff's claims because it sets forth the exact and only provisions that govern or relate to the underlying substance of her allegations that she was not paid at the correct rate. Moreover, Plaintiff indeed refers to the CBA in her Amended Complaint. *See* ECF Doc. 17, Exhibit 1, ¶¶ 11 (referencing CBA), 12-13 (describing Article 13), 22-23 (describing Article 13), 26-27 (discussing her union representatives), 30-33 (discussing filing of grievance). As such, the Court may properly consider the CBA on the instant Motion. *See Beddall v. State Street Bank and Trust Co*, 137 F.3d 12, 17 (1st Cir. 1998) ("When, as now, a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document [offered by the movant](the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it. …" (citing *Fudge v. Penthouse Int'l, Ltd.,* 840 F.2d 1012, 1015 (1st Cir. 1988)).

wages, stating that "[s]ubject to section 15.7 [of the CBA] wages and increases shall be determined by Appendix A – Step Grid" and Article 13 itself, which addressed increases pursuant to the Agreement. *See* ECF Doc. 17, Exhibit 1, ¶¶ 11-12. Pursuant to this Agreement, employees in Local 170 received backpay and a wage increase. *Id.* at ¶ 15.

At this time, Plaintiff's hourly rate increased by $1.23, bringing her total hourly rate to $36.79, which is Step 7 of the Step Grid. *Id.* at ¶ 17. An employee is placed on a step in the Step Grid "based on the employee's completed years of experience." *Id.* at ¶ 12. According to Plaintiff, based on her years of experience, she belonged at Step 23 and should have been earning $50.57 per hour. *Id.* at ¶ 17-18. Plaintiff "immediately notified her Union Representative and SVH Director" regarding the perceived error in her pay. *Id.* at ¶ 19.

At or around this same time, Plaintiff became aware that SVH did not have an accurate resume on file. *Id.* at ¶ 20. Accordingly, SVH Human Resources requested a copy of Plaintiff's resume such that Plaintiff could "prove her years of experience." *Id.* at ¶ 20.

In or around this time, Local 170 began negotiating with SVH in order to adjust rates of pay for five (5) employees, including Plaintiff—all of whom asserted that they had been incorrectly placed on the Step Grid. *See* Affidavit of Diane Saunders, ¶ 4. SVH and Local 170 disagreed over the interpretation and application of the CBA on this issue. However, they had negotiated a resolution of the dispute in or around May 2023 whereby SVH agreed to adjust the years of experience for three (3) employees, including Plaintiff, based on a resume review. *Id.* at ¶ 5. SVH and Local 170 were still negotiating the terms of a settlement agreement on this issue when Plaintiff filed the instant Amended Complaint. *Id.* at ¶¶ 6-7, Exhibit B.

Plaintiff maintains that she is not being paid the correct wage as required by the CBA. *See* ECF Doc. 17 at ¶¶ 27-28. Plaintiff also maintains that other mammography technicians have

4

received the retroactive salary from July 2022, while Plaintiff has not. *Id.* at ¶ 29. Plaintiff has "repeatedly asked her union representative" and SVH to revise her rate. *Id.* at ¶ 26. Plaintiff "has instructed her union representative to file a grievance on her behalf," *Id.* at ¶ 31, and has attempted to file a grievance on her own behalf. *Id.* at ¶ 34.

## ARGUMENT

### I. LEGAL STANDARD

When reviewing a motion to dismiss pursuant to Rule 12(b)(2) or 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff. *See Gilbert v. City of Chicopee*, 915 F.3d 74, 80 (1st Cir. 2019) (citations omitted). "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S.

### II. THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER TENET.

Service of a summons on an out-of-state defendant in a federal question case may be proper if the federal statute conferring jurisdiction provides for nationwide service of process. Fed. R. Civ. P. 4(k)(1)(C) (serving a summons ... establishes personal jurisdiction over a defendant when authorized by a federal statute). However, if the federal statute is silent on nationwide service of process, Fed. R. Civ. P. 4(k)(1)(A) requires that service of process be determined by the state long-arm statute. *Wang v. Schroeter*, No. CIV.A. 11-10009-RWZ, 2011 WL 6148579, at *4 (D. Mass. Dec. 9, 2011), aff'd, No. 12-1080 (1st Cir. 2012).

Here, the statute conferring federal question jurisdiction is the FLSA, which does not provide for nationwide service of process. *See* Fair Labor Standards Act of 1938 § 16; 29 U.S.C.A. § 216(b). Therefore, this Court must turn to state law for authority to exercise

jurisdiction over an out-of-state corporation like Tenet. *Akro Corp. v. Luker*, 45 F.3d 1541, 1544 (Fed. Cir.) (when federal statute does not provide for service of process, court must look to forum state's long-arm statute), cert. denied, *Luker v. Akro Corp.*, 515 U.S. 1122, 115 S. Ct. 2277, 132 L.Ed.2d 281 (1995); Wang, 2011 WL 6148579 at *4; *Pelchat v. Sterilite Corp.,* 931 F. Supp. 939, 943 (D.N.H. 1996).  The Massachusetts long-arm statute provides for service of process on an out-of-state defendant if the court has personal jurisdiction over the defendant under the long-arm statute. Mass. Gen. Laws ch. 223A, § 4.

In addition to satisfying the requirements of the long-arm statute, the due process requirements of the United States Constitution also must be satisfied.  *Nowak v. Tak How Invs., Ltd*., 94 F.3d 708, 712 (1st Cir. 1996).  Therefore, this Court must conduct the same personal jurisdiction inquiry, and concomitant "minimum contacts" analysis as it does in diversity cases, regardless of the fact that the claim giving rise to jurisdiction in this case is a federal statute. See *Catrone v. Ogden Suffolk Downs, Inc.*, 647 F. Supp. 850, 855 (D. Mass.1986) (observing that in federal question cases, "'minimum contacts' acts as a restraint on personal jurisdiction—not as a matter of Fifth Amendment due process, but rather indirectly as a matter of the directive of [Fed. R. Civ. P. 4] to look to the state's long arm statute"); *Johnson Creative Arts, Inc. v. Wool Masters, Inc.*, 743 F.2d 947, 950 (1st Cir.1984) (noting that it is not constitutional concerns of due process which impose "minimum contacts" as a limitation on the federal courts in federal question cases; rather, the reference in the Federal Rules of Civil Procedure to the state long-arm statutes "incorporates the requirement of minimum contacts as a precondition for extraterritorial service of process").

The exercise of jurisdiction can be through general or specific jurisdiction.  As the First Circuit has explained,

6

> "Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities. General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state."

*United States V. Swiss American Bank, Ltd.*, 274 F.3d 610, 618 (2001)(citations and quotations omitted). The burden of demonstrating jurisdiction rests on the plaintiff. *Id.* When a district court rules on a motion to dismiss for lack of jurisdiction without holding an evidentiary hearing, the Court applies the "prima facie" standard to its determination. *Id.*

Further, in order "[t]o satisfy the requirements of the long-arm statute, [Mass. Gen. Laws ch. 223A,] Section 3(a), the defendant must have transacted business in Massachusetts and the plaintiffs' claim must have arisen from the transaction of business by the defendant." *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 625 N.E.2d 549, 551 (1994). In this way, the long-arm statute "imposes constraints on personal jurisdiction that go beyond those imposed by the Constitution" *Id.* (relying on *Gray v. O'Brien*, 777 F.2d 864, 866 (1st Cir.1985)).

Here, Plaintiff has not carried her burden of demonstrating a prima facie case of either general or specific jurisdiction over Tenet, nor has she satisfied the requirements of the Massachusetts long-arm statute. As set forth in the Affidavit of Margie Arion, neither at the time of the events giving rise to this lawsuit, nor presently, has Tenet solicited or transacted business in Massachusetts. *See* Affidavit of Margie Arion, ¶ 5. Further, Tenet did not and does not employ anyone or maintain any offices in Massachusetts. *Id.* As such, Plaintiff has not shown that Tenet has had purposeful contacts with Massachusetts, much less the type of "continuous and systematic activity" necessary to confer general jurisdiction.

Plaintiff's attempt to establish specific jurisdiction is similarly untenable. Plaintiff's Amended Complaint contains no allegations whatsoever regarding any specific conduct by Tenet

7

or its employees. See ECF Doc. 17, Exhibit 1. At the relevant time, Plaintiff was not employed by Tenet, but by an entity called VHS Acquisition Subsidiary Number 9, Inc. d/b/a Saint Vincent Hospital ("SVH"). *Id.* Plaintiff's Amended Complaint focuses solely on her work as a Per Diem Mammography Technologist at SVH and on SVH's alleged failure to compensate her in accordance with Local 170's CBA. *Id.* Therefore, not only has Plaintiff failed to demonstrate specific jurisdiction, but she has also failed to satisfy the requirements of the Massachusetts long-arm statute.

**III.    PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST TENET BECAUSE THERE WAS NO EMPLOYMENT RELATIONSHIP.**

The existence of an employment relationship is a primary element of any employment-related claim. While SVH was Plaintiff's employer, Tenet was not. Further, Plaintiff has not sufficiently alleged any facts that would demonstrate Tenet maintained a sufficient level of control of Plaintiff's employment, such that it can be considered a joint employer.

In order to determine whether an employment relationship exists, courts look at "the totality of the circumstances bearing on whether the putative employee is economically dependent on the alleged employer." *Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998). In the First Circuit, this analysis typically involves consideration of four factors: "whether the alleged employer (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." Id. This four-factor test applies to each of Counts II through VII (the wrongful termination, whistleblower, Wage Act/Overtime Law, and FLSA claims). *See Jinks v. Credico (USA) LLC*, No. 1784CV02731-BLS2, 2020 WL 1989278, at *7 (Mass. Super. Mar. 31, 2020) (applying *Baystate* factors in Wage Act case); *Mullally v. Waste Mgmt. of Mass., Inc.*, 452 Mass. 526, 531 (2008) (observing

that Overtime Law was intended to be "essentially identical" to FLSA, and thus construction of FLSA by federal courts is relevant); *Orell v. UMass Mem'l Med. Ctr.*, 203 F. Supp. 2d 52, 62-63 (D. Mass. 2002) (applying similar standard to determine joint employer status for purposes of plaintiff's Massachusetts whistleblower and wrongful termination/public policy claims, considering whether alleged employer: supervised employee's day-to-day activities, had authority to hire or fire employees, promulgated work rules and conditions of employment, controlled work assignments, and issued operating instructions).

Nowhere does Plaintiff allege (nor can she) that Tenet had any of the authority, discretion or involvement described above. In fact, Plaintiff's Amended Complaint is completely devoid of any specific allegation against Tenet whatsoever. Faced with similar allegations, even taken together, courts have not hesitated to hold that there was no joint employer relationship. *See Rhea*, 2020 WL 5016698 at *3 (no joint employer relationship where defendant did not pay plaintiff or make determinations about his pay, and could not make independent determinations concerning hiring or firing); *In re Enter. Rent-A-Car*, 683 F.3d at 471 (no joint employer relationship where defendant had no hiring or firing authority, no authority to promulgate work rules or assignments, no authority to set compensation, nor involvement with employee supervision or discipline). In sum, Plaintiff's Amended Complaint fails to allege sufficient allegations to establish liability of Tenet for any of her employment-related claims.

## IV. ALL OF PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED BY FEDERAL LAW.

The Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, governs "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." Where, as here, a plaintiff is subject to a CBA containing a broadly-phrased arbitration provision, the LMRA completely preempts any state law claims that

are intertwined with the interpretation and application, or that depend on the meaning, of the CBA; those claims may not proceed if the plaintiff has failed to exhaust his or her internal remedies. *See Rueli v. Baystate Health, Inc.*, 835 F.3d 53, 59 (1st Cir. 2016); *Cavallaro v. UMass Memorial Healthcare, Inc.*, 678 F.3d 1 (1st Cir. 2012); *Haggins v. Verizon New England, Inc.*, 648 F.3d 50, 55 (1st Cir. 2011).

The First Circuit's decisions in *Rueli* and *Cavallaro* are particularly informative here, as they are factually analogous with respect to both Plaintiff's employment with SVH and her legal claims. In those two cases, the Court dismissed state law wage and hour claims brought by visiting nurses against hospital organizations (like SVH), holding that the nurses' claims were governed by internal grievance and arbitration provisions contained in their CBAs. In *Rueli*, the plaintiffs claimed that the volume of work they were assigned required them to do preparatory work and follow-up work before and after their shifts, and that they did not receive overtime payments to which they were entitled. Further, they argued that because a lot of the unpaid work was completed while they were logged onto the employer's computer system, the company was aware of the work being done and therefore liable. Similarly, in *Cavallaro*, the plaintiffs claimed that they had not been paid for "time spent working through their meal breaks, before and after work, and during training sessions." *Cavallaro*, 678 F.3d at 8. In both cases, the First Circuit held that the plaintiffs' claims were preempted by the LMRA. As the Court noted, judges must give "deference to the agreed-to remedies" … "so long as relief can be provided within the CBA process." *Cavallaro*, 678 F.3d at 7; *see also Rueli*, 835 F.3d at 65. Here, Plaintiff's exclusive access to relief was via her CBA, and she claims to have initiated the grievance process.

The First Circuit has identified two categories of impermissible state law claims in the context of LMRA preemption, those that either: (1) "allege[] conduct that arguably constitutes a

10

breach of duty that arises pursuant to a collective bargaining agreement," or (2) "arguably hinge[] upon an interpretation of the collective bargaining agreement." *Haggins*, 648 F.3d at 55 (internal quotations and citations omitted). Here, relief could have been provided by the CBA, but Plaintiff failed to avail herself of that process.[4]

Here, Plaintiff's allegations focus exclusively on a purported failure by SVH to pay her in accordance with the CBA. The CBA, and SVH's "inaccurate" interpretation of it, form the entire basis of her Amended Complaint. In fact, nearly all Counts as alleged by Plaintiff reference the CBA explicitly. Counts I and II, which allege violations of the Massachusetts Wage Act, reference the CBA in alleging that Plaintiff is owed back-pay based on wage increases dictated by the CBA. *See* ECF Doc. 17 , ¶ 47, 50. Counts IV (Breach of Covenant of Good Faith and Fair Dealing), and V (Breach of Contract) both characterize the CBA as a "contract," ¶¶ 51, 55 which the SVH Defendants breached. Counts VI (Unjust Enrichment), VII (Promissory Estoppel), and VIII (Quantum Meruit) are all based on Defendants purported failure to compensate Plaintiff accurately based on her placement on the Step Grid. Lastly, Count X (Request for Declaratory Judgment) requests an interpretation of the CBA regarding owed back-pay. Each of these counts fall squarely within the grievance and arbitration provision in the CBA.

In *Cavallaro*, the plaintiffs argued that their wage claims did not raise any interpretative dispute about their CBA; rather, they merely involved factual disputes "as to whether plaintiffs were paid for time spent working through meal breaks, before and after work, and during training sessions." *Cavallaro*, 678 F.3d at 8. Agreeing with this concept and, yet, finding preemption, the Court held that "[e]ven so, some provisions of the CBA governing the named

---

[4] While Plaintiff alleges that she filed an internal grievance through the CBA to grieve her pay rate, *see* ECF Doc. 17, Exhibit 1, ¶ 11, this fact does not preclude preemption. *See Flibotte v. Pennsylvania Truck Lins, Inc.*, 131 F.3d 21, 23 (1st Cir. 1997).

plaintiffs' employment will likely need to be interpreted[.]" *Id*. The same is true here, and in fact, Plaintiff's Amended Complaint quotes the exact provisions that require interpretation, Article 13 and the Step Grid, which is supposed to be "based on the employee's completed years of experience." *See* ECF Doc. 17, Exhibit 1, ¶ 12. These provisions of the CBA, cited by Plaintiff herself, are the only basis for Plaintiff's assertion that she was underpaid.

In sum, Counts I, II, and IV through X of Plaintiff's Amended Complaint involve interpretation of multiple provisions of the applicable CBA. Therefore, dismissal of these claims is warranted at this time. *See Haggins*, 648 F.3d at 54 (1st Cir. 2011) (question of LMRA preemption is "primarily a question of law").

**V. PLAINTIFF HAS FAILED TO STATE A VALID FLSA CLAIM AGAINST THE SVH DEFENDANTS BECAUSE IT IS CLEAR ON THE FACE OF HER AMENDED COMPLAINT THAT SHE IS NOT OWED ANY WAGES UNLESS AND UNTIL SVH AND LOCAL 170 AGREE TO BARGAIN FOR THOSE WAGES.**

Plaintiff's factual allegations focus almost entirely on her explanation of her Collective Bargaining Agreement and her interpretation of Article 13, including the Step Grid which governs her wages, *see* ECF Doc. 17, Exhibit 1, ¶¶ 11-25. Plaintiff admits that her entitlement to a specific rate of pay is dependent upon her placement on the Step Grid, and that her placement on the Step Grid requires an interpretation of the phrase in Article 13 which states that an employee's placement on the grid is "based on the employee's completed years of experience." *Id.* at ¶¶ 12-18. She further emphasizes this by reiterating her attempts to propel her union to negotiate a resolution of her complaint. *Id.* at ¶¶ 26-35. It is obvious from the face of her Amended Complaint that Plaintiff has no entitlement to the pay rate that she now demands unless and until SVH and Local 170 negotiate a resolution.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiff's Amended Complaint in its entirety against the SVH Defendants for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and as against Tenet for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

    Respectfully submitted,

DEFENDANTS VHS ACQUISITION SUBSIDIARY NO. 9, INC., and TENET HEALTHCARE CORPORATION

By their attorney,

/s/ *Diane M. Saunders*
Diane M. Saunders, BBO #562872
Andro S. Hannoush, BBO #706657
OGLETREE, DEAKINS, NASH, SMOAK
 & STEWART, P.C.
One Boston Place, Suite 3500
Boston, MA 02108
Tel. (617) 994-5700
Fax (617) 994-5701
diane.saunders@ogletree.com
andro.hannoush@ogletree.com

January 22, 2024

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified of the Notice of Electronic Filing on this 22nd day of January 2024.

                                      */s/ Diane M. Saunders*
                                      Diane M. Saunders

59572981.v2-OGLETREE