UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KAREN LJUNBERG,  )
    Plaintiff  )
  )
v.  )
  )    C.A.: 23-40166
SAINT VINCENT HOSPITAL,  )
TENET HEALTHCARE CORP.  )
TEAMSTERS UNION LOCAL 170,  )
    Defendants  )

**AFFIDAVIT OF ELIAS GILLEN IN SUPPORT OF
TEAMSTER'S LOCAL 170'S MOTION FOR SUMMARY JUDGMENT**

I, Elias Gillen, depose and say as follows:

1. I am a business agent employed by United Brotherhood of Teamsters Local 170. I have been a Local 170 member since 1993 and I have been a business agent for six years.

2. I am responsible, along with another business agent, Ken Bergen, for Local 170's bargaining unit at St. Vincent Hospital, which is operated by the co-defendant in this case, Tenet Healthcare Corp. ("Tenet"). Local 170 represents non-nurse technicians, technologists, therapists, technicians, etc. who work at St. Vincent's hospital. I was the primary spokesperson for Local 170 in negotiations in 2022 and 2023 for a new three-year collective bargaining agreement. The negotiations were long and difficult and involved a federal mediator, but ultimately a contract was reached and was ratified by the bargaining unit. The collective bargaining agreement went into effect March 3, 2023.

1

3. One of the main issues in the negotiations was a pay scale for unit members that reflects their years of experience in their field: the more experience an employee has, either with Tenet or with another employer, the higher their wage. Tenet and Local 170 agreed on a scale of wages which was attached as an Exhibit to the collective bargaining agreement ("CBA"). The signed CBA is attached to this affidavit as **Exhibit 1**. We understood and agreed with Tenet that Tenet would put together a wage chart with employee's names inserted for their years of experience to determine what their pay would be. We all understood that it was likely that the first draft of the wage chart might misclassify some employees. Misclassification did occur with respect to several employees who notified me that they were misclassified. Among these bargaining unit members was Karen Ljunberg.

4. I first raised the issue of misclassified employees with Tenet's Human Resources Director, Francis Henderson, even before the CBA went into effect on March 3, 2023. On February 27, I emailed Ms. Henderson that Ljunberg had been misclassified and that she should have been higher on the wage scale. A true and accurate copy of my February 27, 2023 email to Henderson is attached to this affidavit as **Exhibit 2**. I followed up with Henderson regarding Ljunberg and brought up another employee for review of his years of experience on February 28, 2023. Also on February 28, I sent an email to Henderson with Ljunberg's documentation concerning her credentials and experience to support Local 170's claim that Ljunberg deserved a higher classification. See February 28 email to Henderson with Ljunberg's credentials, attached hereto as **Exhibit 3**.[1]

---

[1] All documents submitted with this affidavit are true and accurate copies. Some documents are part of an email chain and so may be submitted in more than on exhibit.

2

5. This began a long negotiation with Tenet about the classification for five employees, including Ljunberg. Henderson wrote to me that Tenet's Human Resources Department was undertaking a review of the employee files to determine whether credit for more years of experience, and a higher rate, were justified. To that end, she requested that two employees, one of which was Ljunberg, forward their resumes to her directly. See email dated March 2, 2023 attached as **Exhibit 4**. I sent Ljunberg's resume the same day. See email dated March 2, 2023, attached as **Exhibit 5**.

6. On March 6, I notified Tenet that there were other members of the bargaining unit who believed they had been misclassified. See email dated March 6, 2023, attached as **Exhibit 6**. I also asked Henderson where the review of Ljunberg and another member stood.

7. On March 6, Henderson asked me for additional information on other bargaining unit members. On March 8 I asked local Tenet employees (Henderson is located in Texas) to get information requested by Henderson for unit members Heidi Pollone and Richard Sliwoski. See email March 8, 2023 attached as **Exhibit 7**.[2]

8. On March 8, 2023, Henderson emailed me to inform me that wage changes for effected employees would be reflected in the March 24, 2023 paycheck and that retroactive pay would be paid the same date. See email dated March 8, 2023, attached as **Exhibit 8**.

9. On March 9, I provided a resume for bargaining unit member Heidi Pollone and on March 10 I provided a resume for Lynne Keener to Henderson. On March 17 I asked Henderson for an update on the wage adjustments. See emails dated March 9, 10 and 17, attached as **Exhibit 9**.

---

[2] For a number of employees who sought an increase in their recognized years of experience, their increased years were not acknowledged because there were gaps in their resumes (years they did not actively work) and for which they were not credited.

EML  3

10. On April 14, I sent an email to Henderson regarding a number of issues, including final resolution of years of service adjustments for bargaining unit members. See email dated April 14, 2023, attached as **Exhibit 10**. I emailed Henderson again on April 24 regarding the years of service issues for members. See email dated April 24, 2023, attached as **Exhibit 11**.

11. On April 24, 2023, I sent Henderson a reminder that I had sent an email ten days prior concerning the years of service issues for employees, as well as other things. On April 25, Henderson responded that she would have the years of experience (YOE) decisions the next day and would send a response then. We also discussed dates for a labor-management committee meeting. See emails dated April 25 and April 26, attached as **Exhibit 12**.

12. On April 27, 2023, Henderson emailed me a proposal for the years of experience to be credited to several employees, including Ljunberg. On May 1, I sent the email around to Mr. Bergen for comment. On May 22, 2023, I emailed Henderson to ask if the final review and approval had been obtained for pay rate changes and informing her that bargaining unit members had emailed me concerning whether the changes had been made. See May 22, 2023 email attached as **Exhibit 13**.

13. On May 24, 2023, Henderson emailed to me a proposal that changed the years of experience for three bargaining unit members, Lynne Keener, Rebecca Menke and Karen Ljunberg. Henderson proposed the adjustment as "non-precedential" and the effective date of the change would be the effective date of the contract. On May 25, 2023, I responded that there was no justification for not paying the employees retroactive to the date of the last collective bargaining agreement, July 2022, as all other wages for unit employees were paid retroactive to that date. See May 24 and 25 emails attached as **Exhibit 14**.

14. I did not receive any substantive response to Henderson to my May 24 email. On June 14 2023, I emailed Henderson about the correct placement of members in the wage scale. I reminded her that Tenet had not reviewed one member's complaint about incorrect classification and that she had reviewed the others and concluded they should be awarded credit for years of experience and their wages increased. I informed her that Local 170 does not agree to limit their backpay awards to anything other than full retroactive pay. I informed her that one member was discussing filing a wage claim at the Attorney General's office, while others were ready to move forward with a grievance. I also informed her that Local 170 would not agree that no other members could come forward after these members' cases were settled. See email dated June 14, 2023 attached as **Exhibit 15**. To be clear, I still believed that a negotiated agreement was better for our members than a grievance because we were negotiating settlements without risk of a poor outcome in arbitration.

15. I received no direct response to my email from Henderson. I sent an email on July 17 recapping where things stood concerning the years of experience credited and the wage rate changes. I reminded Henderson that, as far as we knew, one member's request for review had not yet been taken up. I asked for a resolution immediately, as we seemed to agree regarding the years of experience to be credited and the wages that should be paid but disagreed about retroactivity. I also addressed some lingering issues about the final CBA. See email dated July 17 attached as **Exhibit 16**.

16. Business agent Ken Bergen and I met with Henderson on July 18, 2023. At the meeting we discussed the years of service and wage rate adjustments for members and retroactivity. Henderson stated she would respond further by the end of the week. No response was received.

17.     On August 9, I again emailed Henderson for a response on the YOE and wage adjustments. I reminded her that two additional names had been submitted for years of experience adjustments. I also addressed Tenet's concern that other members may be lurking who had not yet submitted for YOE changes and wage adjustments. I stated that any adjustments arising in the future would be the subject of a grievance, which might be stale under the CBA by the time it was made. See email dated August 9, attached as **Exhibit 17**.

18.     Having heard nothing regarding wage adjustments, I sent an email to Henderson asking for a response on wage adjustments. See August 24, 2023 email attached as **Exhibit 18**.

19.     On August 29, 2023, in response to an email on a different contract issue, I reminded Henderson that we had still not heard from Tenet on the years of experience/wage adjustment issues. See August 29, 2023 email attached as **Exhibit 19**.

20.     On August 29, Henderson replied that she had responded to my emails and that she was frustrated that other employees continued to raise issues concerning their years of experience. I replied that Local 170 would not bring any other names forward to be adjusted by the process we had adopted for those who brought claims immediately after the wage chart was published. By this I meant that no future YOE complaints would be brought up to be considered outside the grievance procedure. See emails dated August 29 and 30 attached as **Exhibit 20**.

21.     Henderson responded on August 30, stating that she acknowledged three members who had provided information to support their change in years of experience and pay grade and stating that the HR Department was finalizing review and pay rate of another member. On September 6, Henderson emailed that Tenet had received the last resume I had sent and it was calculating retroactive pay. On September 12, I replied and reminded Henderson that there was

6

one other employee whose name was not on her list but which we had discussed. See emails dated August 30, September 6 and September 12 attached as **Exhibit 21**.

22.     On October 7, Ljunberg copied me on an email she sent to Christian Bartholomew, the Chief Human Resources Officer for St. Vincent Hospital. She informed him she had retained an attorney and asked him when she could expect her raise. I am unaware of any response from Bartholomew. See email dated October 7, 2023, attached as **Exhibit 22**.

23.     I forwarded Ljunberg's email to Henderson, and I expressed my opinion that Tenet needed to finally address the adjustments for those who had more experience than they had been given credit for. See email dated October 7, 2023 attached as **Exhibit 23**.

24.     On October 9, 2023, Henderson sent to me a settlement agreement to address the years of experience adjustment, and wage increase, for five employees. However, Tenet conditioned the settlement offer on a release from Ljunberg (presumably because she had retained counsel) and an agreement by Local 170 that all other employees were correctly classified as to their years of experience (enumerated section 4) and a provision that Local 170 would not process any grievances related to years of experience for any employee in the future (enumerated section 6). The settlement with Local 170 was also contingent on Ljunberg signing the release Tenet proffered (enumerated section 7). See email dated October 9, 2023 and attached settlement agreements, attached as **Exhibit 24**.

25.     On October 10, I responded to Henderson's email. I raised questions about the issue of cutting off back pay for one of the unit members who first brought her complaint to her manager and then to Local 170. The manager accomplished nothing in the several months they were to have been working on correcting her years of service. I proposed that the employee (Cinthia Coletti) be paid all backpay, as others were to be paid. Henderson responded and,

among other things, stated that she was authorized by Tenet to make the offer she made and no more. See emails dated October 10, 2023, attached as **Exhibit 25**.

26. At the same time on October 10, 2023, I emailed the proposed settlement and release to Karen Ljunberg and to her attorney, Janet Ruggieri. I explained that Tenet was agreeing to pay her full claim and that Tenet was conditioning its offer of settlement on her executing the release I attached. At that time, I left the decision whether to sign the release to Ljunberg and her attorney. See email dated October 10, 2023 attached as **Exhibit 26**.

27. Ljunberg replied a few hours later, informing me that she would not sign the release and that, if I had any questions, to contact her attorney. See email dated October 10, 2023 attached as **Exhibit 27**.

28. I sent an email on October 11, 2023 in response to Henderson's offer the day before. I rejected the settlement for two reasons. After consultation with Local 170 counsel it was clear that Ljunberg should not be singled out for a release because she had threatened wage litigation and, because Local 170 is the bargaining agent for all of its bargaining unit members, it was inappropriate for Ljunberg to sign a separate agreement. Second, Cinthia Coletti was still not being paid her entire backpay. I suggested that the other three employees be paid according to the proposed agreement and that we continue to work to come to an agreement concerning Ljunberg and Coletti. See email dated October 11, 2023 attached as **Exhibit 28**.

29. Henderson did not respond to my October 11, 2023 email and I have had no communication with Henderson or anyone else at Tenet concerning these issues since that time.

30. After this lawsuit was served, the negotiations concerning credit for years of experience, wage increases and retroactivity have been conducted by counsel for Tenet and Local 170. On information and belief, the wages and retroactivity have been resolved but there remain



8

issues concerning waiver of claims and rights to grieve incorrect years of experience by other employees. I am aware of one other employee, not in the group with Ljunberg, who has filed a grievance regarding years of experience and rates of pay. That grievance is working its way through the grievance procedure.

31.     To the best of my knowledge, I have responded to every inquiry made by Ljunberg as we have negotiated the correct years of experience, wage rates and backpay for the five employees in this group, including Ljunberg. If the negotiations fail, Local 170 will likely file a grievance on behalf of those employees.

**Signed under the pains and penalties of perjury this 22nd<sup>th</sup> day of January, 2024.**

/s/ Elias Gillen

Elias Gillen

<u>Certificate of Service</u>

      I hereby certify that on January 23, 2024 a true copy of the above document was filed through the Courts electronic filing system and, additionally, was served by electronic mail on the following:

Janet Ruggieri, Esq.
Murphy & Rudolf
446 Main Street
Worcester, MA 01608
*ruggieri@murphyrudolf.com*

Diane Saunders, Esq.
Ogletree Deakins
One Boston Place, Suite 3500
Boston, MA 02108
*Diane.Saunders@Ogletree.com*

                                                    <u>/s/ David J. Officer</u>